Day, J.
The subject matter of controversy, in this case, is a fund of $352, arising from a sale of personal property consisting of an engine, drilling tools, and appliances used in drilling oil and gas wells; taken as the property of one Michael Wall, and sold at the suit of his creditors to satisfy their claims. The sale was made by a receiver, appointed by the common pleas court, at the instance of Struther, Wells & Co. The proceeding was to marshal liens and determine the priority of the liens of the various claimants, who were contesting for precedence, the claim of precedences being based on liens alleged to have been acquired by the proper levy of attachments on the property sold by some of the creditors; and by perfecting mechanics’ or material-men’s liens,in accordance with the provisions of the statute, by others of the creditors. The court of common pleas disposed of the mechanics’ or material men’s liens, ordering these claims first paid in the order of precedence found by the court, and to the exclusion of the claimants of liens by the levy of attachments. The last named claimants were not content with the adjudication of the lower court, and prosecute error here to obtain a reversal of the order and judgment, and for a finding and judgment in favor of the plaintiffs in error.
The single question is presented, which of the claimants takes precedence in the distribution of the fund in hand, the holders of liens by virtue of the levies in attachment,or the claimants of liens by virtue of the statute providing a lien in favor of furnishers of labor, material, &c., for the *402 construction of a building, structure, oil or gas well, mentioned in the statute.
The essential facts in the case are undisputed. It is a fact that the Jerecke Manufacturing Company acquired a lien, by the levy of attachment, of date July 31, 1895; Stark-weather and Maffin by the same means, of August 2, 1895; and Huber, of August 6, 1895. The claimed liens by virtue of the mechanics’ lien law, if valid liens at all, are of the dates following: Struther, Wells & Co., May 22, 1895; Muller & Lego, June 4, and A. A. Scott & Co., May 29, 1895. The property sold by the receiver, from which the fund in question was derived, was the property of Michael Wall, was sold to him by Struther, Wells & Co., Muller & Lego, and A. A. Scott & Co., not for the purpose of entering into and becoming part of any oil or gas well or structure pertaining thereto for the operation thereof, but to be and remain Wall’s personal property,and constituting his outfit of tools and appliances for drilling wells for whomsoever might employ him; and these articles of property were only used by Wall in connection with the well in question as tools and appliances for the drilling of it, and did not become, in any sense, part of the well. Within the time limited and fixed by the provisions of the statute, each of the parties named as selling property to Wall, made out a claim in due form, verified it and filed it in the proper office for record, and did everything necessary, under the mechanics’ lien law, to perfect a lien. Did they succeed in perfecting a valid, lawful lien, is the problem. The liens of the attachments are all subsequent to the claimed liens by virtue of the statute, and if it shall be determined that the alleged mechanics’ liens are lawful and valid, it settles the question adversely to plaintiff in error and the other attachment lienholders, and postpones them, so they will not at all participate in the distribution. Therefore the whole question is settled and determined by determining the question of the validity of the claimed mechanics’ liens.
*403 The Mechanics’ Lien Law, as amended in 1894, has, by this court, and the supreme court, in the Tingle — Crawford case, 9 C. C. Reports, 708, to an extent and in some of its aspects, been held invalid, and the vexed question, as to the extent of its invalidity, whether entire or only partial, is suggested by counsel on either side, as present interest would seem to require; but we do not find it necessary in the disposition of the question here presented, to decide, or even consider these suggestions. We think the question is easily disposed of on proper grounds without regard to the validity or invalidity of the statute,and, for all puipo&es of the case, the lien law may be held and regarded as constitutional and valid legislation. Then, regarding the law as valid, the question is presented: Did the parties, Struther, Wells & Co., Muller & Lego and A. A. Scott & Co., by their proceedings under the mechanics’ lien law, acquire a lien on the property by them sold to Michael Wall? No doubt but that each of the sellers could have retained a hold — a valid lien on the property sold, by virtue of the statute authoriz. ing chattel mortgages, or by retaining title to the thing sold in themselves until the purchase price was paid or otherwise secured, by complying with the provisions of the statute regulating conditional sales. There are ample statutory provisions by which sellers can retain a lien on the identical property disposed of,for the purchase price; but can the same result be accomplished, under the facts in the case, by virtue of the statute providing a lien in favor of mechanics and others — by virtue of the provisions of section 3184 of the Revised Statutes? We are of opinion that it cannot; that the provisions of that and following sections, under the facts we have here, cannot be made available for that purpose. It is not every sale of material or machinery, designed by the purchasers to be used in some form in connection with the construction of an oil or gas well, or some one of the structures named in the section, that its provisions will en *404 able the seller to perfect a lien for the unpaid purchase price upon the finished well or structure, including the material or machinery so furnished. To enable the seller to accomplish that result, he must not only supply the material, machinery or labor on an express contract with the owner of the thing to be constructed,or his agent, trustee, contractor, or sub-contractor, for the express purpose of entering into the construction and becoming a part of the oil well or other structure; but the material or thing so furnished, must, in fact, enter into and become a constituent part of the completed structure. The material or machinery must be incorporated into the finished whole, so that it loses its identity and ceases to exist as a separate entity. In such case, the title or ownership of the thing furnished, passes to and vests in the owner of the well or structure, as an entirety. The various elements contituting the completed thing, including the material so furnished and the interest of the owner, whether of lease-hold or free-hold, have become fused and solidified, and are not susceptible of being divided and separately pursued and subjected, by legal process, to the payment of the price agreed to be paid: hence the law enables the seller, by following its provisions, to acquire^a lien on the entire completed thing, to secure payment for the portion contributed by the seller, towards the construction or repair of the entire structure or thing. Such law simply accomplishes natural justice between man and man, and its enactment was only the recognition and putting in;the form of statutory provision of rights and equities already, and always, existing between parties to such a transaction; and that such was undoubtedly the legislative purpose and intent in enacting the mechanics' lien law, it seems to us, is made manifestly obvious by a careful reading and^consideration of the provisions of the entire law. This is so with regard to the provisions and purposes of the law generally, and it is so when we consider its provisions specially, and *405 only in so far as they relate to the supplying of material, machinery or labor, and the construction and operation of oil or gas wells. Divested of -all other matters, and read especially with reference to that one subject, section 3184 would be, in substance, as follows:
Sec. 3184: “A person who performs labor or furnishes machinery or material for * * * digging, drilling, plumbing, boring, operating, completing or repairing of any * * * oil or gas well * * * by virtue of a contract with, or at the instance of the owner thereof, or hie agent, trustee, contractor or sub-contractor, shall have a lien to secure the payment of the same upon such * * * oil or gas well * * *, and upon the material so furnished, and upon the interest, lease-hold, or otherwise of the owner in the lot . or land on which the same may stand. * *
The material or machinery must be furnished for the drilling, plumbing, completing, or operating the oil or gas well; by virtue of a contract with the owner of the well or some one authorized to act for and bind him. Clearly contemplating that the material or machinery must be furnished for the purpose and with the expectation of its entering into the construction and becoming part of the well, or, of the appliances for operating it, and the purchaser ■ must be, in substance and fact, the owner of the well. None of these statutory requirements are present in the-case before us. Wall was not authorized to act for and bind the owner of the well; he was only an employe to make the well — hired to perform the physical labor of erecting the well. The machinery and material sold to Wall was by virtue of a contract between the sellers and -Wall alone; was not even furnished with the expectation that title would pass to the owner of the well, or, that the property sold would, in any sense, become part of the well, or' of the appliance ‘ for operating it after it was constructed, but with full knowledge that it would remain the property of Wall, and constitute a part of his tools in carrying on his occupation *406 of driller of oil and gas wells. It was a straight-out sale to Wall for his own use and behoof in pursuing his ordinary business, and differs in no way from any ordinary sale of personal property, and the sellers could only obtain a lien on the property sold in the usual way provided, in such case, by the statutes in force at the time.
W. H. Cunningham, for Plaintiff in Error.
Brotherton & Brotherton, for Starkweather & Maffin.
W. W. Chapman, for Struther, Wells & Co.
Cable & Parmenter, for Scott & Co., and McComb, Rec’r,
If the conclusion reached is correct, it follows that Struther, Wells & Co. ,■ Muller & Lego, and A. A. Scott & Co., misunderstood their right in the premises — mistook their remedy, and acquired no lien as against the liens of the attaching creditors, and the court below, in giving them preference, was in error for which the judgment must be reversed.
The judgment is reversed, with costs, for which execution is awarded. There being no dispute as to the facts — • the parties having agreed upon the facts, this court is authorized to render the proper judgment; and this court now rendering the judgment the common pleas should have rendered, finds the priorities in favor of the Jerecke Manufacturing Company, Starkweather, Maffin and Huber, in the order named, and against the claimants of mechanics’ liens. The fund is ordered paid out in the order above named. 1. The Jerecke Mf’g. Co. 2. Starkweather. 3. Maffin. 4. Huber. It is ordered that all costs, including any allowance to the receiver, be paid by Struther, Wells & Co., McComb, receiver of Muller & Lego, and A. A. Sco“ & Co. in the proportion of one-third each. Judgme may be entered, and in default of payment for thirty days, execution may issue: